UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

UNITED STATES OF AMERICA

**DECISION AND ORDER**
09-CR-331A

v.

MATTHEW SMITH,

                    Defendant.

═══════════════════════════════════

## I.    INTRODUCTION

Pending before the Court is a motion (Dkt. No. 764) by defendant Matthew

Smith for release on reasonable bail conditions.  Defendant has been in

continuous federal custody since September 22, 2010, when the Court arraigned

him on the Second Superseding Indictment.  Now, approximately 30 months after

the original order of detention, defendant submits two arguments in favor of

release.  Principally, defendant argues that the Court's decision granting bail for

co-defendant Hector Rodriguez ("Rodriguez") (Dkt. No. 702) constitutes a change

of circumstances that warrants revisiting bail.  Second, and related to the first

argument, defendant insists that his situation matches that of his co-defendant.[1]

Consequently, according to defendant, any further detention would amount to a

_____

[1] Hector Rodriguez no longer is in a pretrial posture; he entered a guilty
plea before Judge Arcara on January 18, 2013.  (*See* Minute Entry 1/18/2013.)

due process violation for the same reasons that led to the Court to find a violation for Rodriguez.

The Government opposes bail for defendant because his length of detention so far has been shorter than Rodriguez's was when the prior Decision and Order issued. Additionally, the Government notes that defendant faces far more serious charges then Rodriguez ever did, including personal participation in murders and attempted murders.

The United States Probation Office ("USPO"), at the Court's request, prepared a memo for the Court and counsel recommending continued detention. The USPO emphasized the nature of the charges along with a lengthy criminal history that includes prior probation and parole revocations. In fact, the USPO noted that defendant was arrested for this case while on parole, leading it to conclude that supervision is futile for this defendant.

The Court held a bail review hearing on March 1, 2013. For the reasons below, the Court denies the motion, but without prejudice to revisit the issue of bail if the Government has not filed a motion to set a trial date by January 15, 2014.

## II.    BACKGROUND

### A.    *Nature of the Charges*

This case generally concerns allegations that defendant and numerous co-defendants belonged to a street gang called the 10th Street Gang and that the

gang members together committed murder, attempted murder, other shootings, and drug offenses as part of the gang's operations. The Government first added defendant to the case when it filed a Second Superseding Indictment on September 15, 2010 (Dkt. No. 69). In Count One, the Government accused defendant of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). The Government alleged that defendant committed the following overt acts in furtherance of the conspiracy:

1. On or about May 17, 2005, defendants PEEBLES, SMITH, JIMMY SESSIONS, and HARVILLE possessed a .38 caliber revolver and 4 rounds of ammunition in a vehicle, in the neighborhood controlled by the 10th Street gang. (Dkt. No. 69 at 14–15.)

2. On or about September 2, 2005, defendants JIMMARLAN SESSIONS and SMITH, and unindicted co-conspirators possessed approximately 35.16 grams of cocaine base, four (4) bags of marijuana, one (1) bag heroin, a Glock 9 millimeter magazine with 10 rounds of ammunition, and $1,256 U.S. currency at 300 Maryland Street, in the neighborhood controlled by the 10th Street gang. (*Id.* at 15.)

3. On or about June 12, 2007, defendant SMITH possessed 40 bags containing a quantity of heroin and 1.43 grams of

hydrocodone in the neighborhood controlled by the 10th Street gang, and defendant SMITH stated to law enforcement that he was a member of "1015." (*Id.* at 17.)

4. On or about June 19, 2010, defendant SMITH and an unindicted co-conspirator punched and kicked victim T.G. while yelling "10th Street," in the vicinity of Prospect Avenue and Massachusetts Street, in the neighborhood controlled by the 10th Street gang. (*Id.* at 31.)

5. On or about July 15, 2010, defendant SMITH sold a quantity of heroin to an individual known to the Grand Jury. (*Id.* at 32.)

6. On or about July 22, 2010, defendant SMITH sold a quantity of heroin to an individual known to the Grand Jury. (*Id.*)

The Government also alleged, as a special factor for Count One, that defendant "did knowingly, willfully, and unlawfully, combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and distribute, 50 grams or more of a mixture and substance containing cocaine base, and 5 kilograms or more of a mixture and substance containing cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)." (*Id.* at 32–33.)

4

In Count Two of the Second Superseding Indictment, the Government charged defendant with racketeering in violation of 18 U.S.C. § 1962(c) and attributed five acts of racketeering to him. In Count 46, the Government accused defendant and others of conspiracy to possess and to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. In Counts 61 and 62, the Government accused defendant of heroin possession with intent to distribute on two separate occasions, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On April 28, 2011, the Government filed a Third Superseding Indictment (Dkt. No. 226) against defendant and others. All of the previous charges against defendant remained, in renumbered Counts 1, 2, 56, 72, and 73, but the Government added a charge (Count 57) of possession of firearms in furtherance of drug crimes in violation of 18 U.S.C. §§ 924(c)(1) and 2. (*Id.* at 107–08.)

The Government filed a Fourth Superseding Indictment on February 2, 2012. (Dkt. No. 408.) The Fourth Superseding Indictment did not change the existing charges against defendant, though it added the following overt acts and special factors with respect to Count One:

> 7.  On or about April 16, 2006, defendants THURMOND, DELGADO, LOPEZ, ANASTASIO and MATTHEW SMITH, and others, known and unknown to the Grand Jury, met at a 10th Street gang member's apartment, located at the corner of Carolina Street and Niagara Street, in the territory controlled

5

by the 10th Street gang.  While they were at the apartment, the defendants discussed retaliating against rival 7th Street gang members for shooting defendant JONATHAN DELGADO'S younger brother earlier in the day.  (Dkt. No. 408 at 16.)

8.     On or about April 17, 2006, defendant MATTHEW SMITH, and others, known and unknown to the Grand Jury, drove past a 7th Street gang hangout located at 155 Pennsylvania Street, Buffalo, New York, and, after driving past 155 Pennsylvania Street, defendant MATTHEW SMITH used his cellular phone and stated, "They are out there, do what you gotta do."  (*Id.* at 17.)

9.     On or about April 17, 2006, in the Western District of New York, defendants, DELGADO, THURMOND, SMITH, PABON, LOPEZ, and ANASTASIO, together with others, with intent to cause the death of another person, did intentionally and unlawfully cause the death of Darinell Young, in violation of New York Penal Law Sections 125.25(1) and 20.  (*Id.* at 41.)

10.    On or about April 17, 2006, in the Western District of New York, defendants, DELGADO, THURMOND, SMITH, PABON, LOPEZ, and ANASTASIO, together with others, with intent to

cause the death of another person, did intentionally and unlawfully cause the death of Brandon MacDonald, in violation of New York Penal Law Sections 125.25(1) and 20. (*Id.* at 41–42.)

The Government added the following acts of racketeering with respect to Count Two:

11. On or about April 17, 2006, in the Western District of New York, the defendant, MATTHEW SMITH, and others, did intentionally and unlawfully attempt to cause the death of victims A.W., P.D., and M.A., in violation of New York Penal Law Sections 125.25(1), 110 and 20. (*Id.* at 47.)

12. Beginning on or before April 17, 2006, in the Western District of New York, the defendant, MATTHEW SMITH, together with others, with intent that conduct constituting a violation of Murder in the Second Degree, New York Penal Law, Section 125.25(1), be performed, by intentionally causing the death of another person, namely, rival gang members and associates, did agree to engage in and cause the performance of such murders. (*Id.* at 47.)

The Government further added new Counts Three and Four to accuse defendant of murder in aid of racketeering:

13.  On or about April 17, 2006, in the Western District of New York, the defendants, MATTHEW SMITH, DOMENICO ANASTASIO, and ISMAEL LOPEZ, together and with others, for the purpose of maintaining and increasing position within the 10th Street gang, an enterprise engaged in racketeering activity, did unlawfully murder Brandon MacDonald, in violation of New York State Penal Law Sections 125.25(1) and 20.  All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.  (*Id.* at 77.)

14.  On or about April 17, 2006, in the Western District of New York, the defendants, MATTHEW SMITH, DOMENICO ANASTASIO, and ISMAEL LOPEZ, together and with others, for the purpose of maintaining and increasing position within the 10th Street gang, an enterprise engaged in racketeering activity, did unlawfully murder Darinell Young, in violation of New York State Penal Law Sections 125.25(1) and 20.  All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.  (*Id.* at 78.)

At oral argument, the Government suggested, in addition to the formal charges, that this defendant and others have attempted to intimidate witnesses and to arrange additional shootings even while in custody.  The Government has

8

not documented this alleged conduct, and defendant denied any involvement in any alleged witness tampering.

The following table summarizes how the charges against defendant have evolved since the Government added him to this case in the Second Superseding Indictment:

| Proceeding | Date | Charges |
| --- | --- | --- |
| Second Superseding Indictment | 09/15/2010 | Racketeering Conspiracy (18 U.S.C. § 1962(d)); Racketeering (18 U.S.C. § 1962(c)); Conspiracy to possess and to distribute cocaine and cocaine base (21 U.S.C. § 846); Heroin possession with intent to distribute two separate times (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)) |
| Third Superseding Indictment | 04/28/2011 | Previous charges plus Possession of firearms in furtherance of drug crimes in violation of 18 U.S.C. §§ 924(c)(1) and 2 |
| Fourth Superseding Indictment | 02/02/2012 | Previous charges plus murder in aid of racketeering (18 U.S.C. §§ 1959(a)(1) and 2); Additional overt acts and special factors for Count One including murders of Darinell Young and Brandon MacDonald; Additional acts of racketeering with respect to Count Two including murder and attempted murder |

**B.** *Discovery and Course of this Case*

Numerous events over the past few years have prompted delays and rescheduling in this case; the Court and the parties have documented many of those events elsewhere in the docket.  Here, the Court will review only those events that have occurred relative to this defendant.  On January 7, 2011, defendant filed a motion (Dkt. No. 157) to join other defendants' requests for extensions of time to file pretrial motions.  At a hearing on January 18, 2011, the Court set a new motion deadline of April 19, 2011, a new response deadline of June 20, 2011, and a new oral argument date of June 22, 2011.  On April 19, 2011, defendant filed another motion (Dkt. No. 218) for an extension of time to file pretrial motions and joined any requests made by any co-defendants.  The Court issued an amended scheduling order that set a new motion deadline of May 31, 2011, a new response deadline of June 17, 2011, and a new oral argument date of June 23, 2011.  (Dkt. No. 224.)  The Third Superseding Indictment required yet another modified schedule; the Court set one on May 24, 2011, with motions due by September 20, 2011.

Meanwhile, the Government filed a motion (Dkt. No. 267) to remove defendant's original counsel, Lawrence Desiderio.  The Government filed the motion because it "has learned that victim T.G., who was assaulted by defendant SMITH as reference[d] in Count 1, paragraph 96 of the [Third Superseding] Indictment, is an individual who has previously been represented as a defendant

10

in federal court by Lawrence Desiderio, Esq.  Therefore, an actual conflict of interest exists as a result of defense counsel's present representation of defendant SMITH, and his former representation of victim T.G."  (Dkt. No. 267 at 3.)  The Court granted the motion orally on August 1, 2011 without opposition and assigned current counsel, Terry Granger, to take over representation.  New counsel proceeded to file two more motions for extensions of time to file pretrial motions  (Dkt. Nos. 305, 356), while the Government filed a motion (Dkt. No. 366) for additional time to respond to omnibus pretrial motions filed up to that point. The Court reset the deadline for the filing of pretrial motions to January 13, 2012 and gave the Government until February 24, 2012 to file responses.  Defendant filed his omnibus pretrial motions on January 13, 2012 (Dkt. No. 385).

The last major event affecting the course of defendant's case was the filing of the Fourth Superseding Indictment on February 2, 2012.  The filing of the new indictment prompted a scheduling conference with all defendants on February 28, 2012, at which the Court set a deadline of May 30, 2012 for any remaining discovery, and a deadline of July 16, 2012 for all pretrial motions.  The Court had directed that all defendants refile their motions in the wake of the Fourth Superseding Indictment.  Defendant filed renewed omnibus pretrial motions on July 13, 2012 (Dkt. No. 519).  Defendant also filed a supplemental motion to suppress on December 21, 2012 (Dkt. No. 705) and then proceeded through the consolidated suppression hearings that the Court held in February 2013.

**C.** *Pending Bail Motion*

Defendant filed the pending bail motion on February 1, 2013. Defendant's motion papers are short because he refers to this Court's Decision and Order for co-defendant Rodriguez as a "substantial change in circumstances" that warrants release. Defendant concedes that his length of detention is shorter than Rodriguez's was; nonetheless, defendant argues that the likely future delay before trial will be the same for him as it was for Rodriguez. Defendant then makes reference to the other two factors that affect a due process analysis by stating in conclusory fashion that "[t]he two other factors weigh the same in this case as they do in the Rodriguez matter." (Dkt. No. 764 at 3.)

The Government opposes the pending motion by placing heavy emphasis on the shorter length of detention and the higher gravity of the charges for this defendant compared to Rodriguez. Picking up on defendant's concession about length of detention, the Government argues that the Second Circuit never has drawn a bright line for due process violations and that defendant's detention has not exceeded the range of detention periods that the Second Circuit has considered in prior cases. Additionally, the Government notes that the charges against Rodriguez, while serious in themselves, all concerned drug and firearm possession. In contrast, defendant faces substantially all of the charges that Rodriguez did plus alleged direct involvement in two murders and several attempted murders. According to the Government, a shorter length of detention

and far more serious charges tip the due process analysis used for Rodriguez

back in favor of continued detention.

## III.    DISCUSSION

### A.    *Reconsideration of Bail Generally*

Once the Court has issued a detention order, it may reconsider that order

and reopen the detention hearing "at any time before trial if the judicial officer

finds that information exists that was not known to the movant at the time of the

hearing and that has a material bearing on the issue whether there are conditions

of release that will reasonably assure the appearance of such person as required

and the safety of any other person and the community."  18 U.S.C. § 3142(f)(2).

"New and material information for Section 3142(f)(2)(B) purposes consists of

something other than a defendant's own evaluation of his character or the

strength of the case against him: truly changed circumstances, something

unexpected, or a significant event."  *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009

WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted).  Where evidence

was available to defendant at the time of the hearing, the hearing will not be

reopened.  *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*,

873 F.2d 796, 799 (5th Cir. 1989).

Here, defendant has conceded implicitly that no new information exists that

affects the availability of conditions of release.  The Court originally ordered

defendant detained based on the nature of the charges in the Second

13

Superseding Indictment and on a significant criminal history that includes prior probation and parole revocations. *Cf. U.S. v. Ard*, No. 10-CR-184, 2011 WL 2421222, at *3 (W.D.N.Y. June 13, 2011) (Skretny, *C.J.*) ("Defendant's criminal history includes one arrest while under probation supervision and two arrests while released on bail, demonstrating that Defendant is unable to comply with conditions of release."). Defendant has offered no change in those circumstances and has not even proposed where he would live if the Court wanted to consider releasing him. *Cf. U.S. v. Mansuryan*, No. 10-10060-03-EFM, 2010 WL 2545989, at *2–3 (D. Kan. June 22, 2010) ("Further militating against release is the fact that Defendant has failed to identify a suitable place for him to reside while out on release."). Defendant offers only the proposition that the Court's prior Decision and Order for co-defendant Rodriguez means bail for him, too. Defendant's proposition assumes that the prior Decision and Order changed any substantive law regarding bail. The prior Decision and Order, however, simply applied Second Circuit case law to an unprecedented length of detention that had no proportionate justification. Additionally, a bail decision for any one defendant in a case does not automatically affect any other defendant in that case. *Cf. U.S. v. Lockwood*, No. 11–CR–85A, 2012 WL 1041606, at *3–4 (W.D.N.Y. Mar. 28, 2012) (Scott, *M.J.*) ("Defendant compares himself to co-defendants who have been released but offers no basis for that comparison.") (citing *U.S. v. Clark*, 68 F.3d 467 (table), 1995 WL 581606, at *2 (5th Cir. Aug.29,

1995) (rejecting a defendant's claim "that her detention violates equal protection because her co-defendants were released" on the grounds that defendant made no showing of disparity in treatment); *U.S. v. Duncan*, 897 F. Supp. 688, 691 (N.D.N.Y.1995) (finding that "the Court gives no weight to the fact that a co-defendant was released on bail, since the determination as to bail for that defendant was based upon independent factors not before the Court.")).

Consequently, and apart from any considerations of due process that the Court explains below, the substantive factors that first prompted defendant's detention persist and weigh in favor of continued pretrial detention.

### B.  *Analysis of Due Process*

As the Court noted when assessing the bail situation for Rodriguez, defendant's argument for a due process violation regardless of substantive factors reduces to one question.  "Simply put, even though substantive grounds exist for detention, has defendant's detention grown so long that his due-process rights override those substantive grounds?"  *U.S. v. Rodriguez*, No. 09-CR-331A, 2012 WL 6690197, at *9 (W.D.N.Y. Dec. 21, 2012) (Scott, *M.J.*) (citing *U.S. v. Ojeda Rios*, 846 F.2d 167, 168–69 (2d Cir. 1988)).  Answering the question requires careful consideration of constitutional and Second Circuit criteria.  "The government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to punishment of the detainee.  Absent an expressed intention to punish, whether

detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention appears excessive in relation to the nonpunitive purpose. Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual. However, when detention becomes excessively prolonged, it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." *U.S. v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (internal quotation marks and citations omitted). "To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: (i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based, that is, the evidence concerning risk of flight and danger to the safety of any other person or the community." *Id.* at 1043 (internal quotation marks and citations omitted). The Court will address each of these factors in turn.

1.  *Length of Detention*

The first factor affecting a possible due process violation is the total length of defendant's pretrial detention, regardless of any breakdown of responsibility that occurs later in the analysis. *See U.S. v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (beginning due process analysis by "[f]ocusing first on the

duration of confinement" and acknowledging "the total time the defendants have been in pretrial detention").  Courts that measure total pretrial detention count actual detention plus likely prospective future detention; they ignore possible future detention that is only speculative.  *See id.* (assessing future scheduling that is "without speculation"); *see also Millan*, 4 F.3d at 1044 ("In weighing potential future detention, however, we take into account non-speculative aspects of future confinement.") (internal quotation marks and citations omitted).  "While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and will rarely by itself offend due process."  *U.S. v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (internal quotation marks and citations omitted).

Here, defendant's attempt to line up with Rodriguez's situation fails for two reasons.  While the Court wants to be careful to avoid taking the kind of formulaic approach to detention periods that the Second Circuit has discouraged, defendant's length of detention simply is not as long as Rodriguez's.  As of this writing, defendant's total length of detention is approximately 30 months.  That length of detention leads to the second reason to reject defendant's argument: Defendant's total length of detention has not yet run past the outer range of factual scenarios that the Second Circuit has ever considered.  *See Rodriguez*, 2012 WL 6690197, at *11 (summarizing current Second Circuit case law).  The Court granted the bail motion for Rodriguez largely because his length of

detention, with or without likely future delay, had no precedent in Second Circuit case law, not even in cases concerning international terrorism. The Court has deep concerns about letting this defendant's length of detention enter uncharted territory, but for now, the urgency that Rodriguez presented is not here. The Court thus finds that the first factor narrowly favors the Government.

### 2. *Responsibility for Delay*

Next, the Court will consider the extent to which the Government is responsible for the time that defendant has spent in pretrial detention. When looking for "responsibility," courts will consider any conduct intended to cause delay. Courts also will charge to defendants time lost to motion practice that could have proceeded in a more efficient or practical way. *Cf. Gonzales Claudio*, 806 F.2d at 341 ("[T]here is some basis for believing that defense counsel could have proceeded more expeditiously by taking a less fragmented approach to pretrial maneuvering."). In between, though, lies a range of case-management decisions by the Government that warrant at least some of the respect afforded to prosecutorial discretion. *See U.S. v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("[W]e decline to adopt a rule that would deter the government from seeking joint trials (or consenting to severance) as a means of economizing judicial and other resources."). Courts generally avoid micromanaging cases, but respect for prosecutorial discretion does not mean that the Government always should

receive complete absolution for decisions whose impact on pretrial detention is foreseeable.

Because this defendant and Rodriguez are co-defendants in the same case, the Court inevitably finds similar circumstances that warrant a similar conclusion. Over the course of this case, the Government and defendant together have asked for extensions of time to file various kinds of briefing. Defendant also needed a change of counsel to avoid a conflict of interest. An earlier disclosure of that conflict theoretically might have been possible. Nonetheless, the Government had no say in the initial appointment of counsel under the Criminal Justice Act and thus should not have to account for any time that current counsel had to spend becoming acquainted with the case. A bigger issue concerning the Government is its decision to supersede the indictment in this case four different times. Compared to Rodriguez and certain other defendants in the case, the Fourth Superseding Indictment constituted a major change for this defendant through the addition of charges relating to murder and attempted murder. The Court will not attempt to encroach on prosecutorial discretion by questioning whether the Government could have handled the new information in the Fourth Superseding Indictment in some other way that would not have slowed down the case. As with Rodriguez, though, the Government has made choices throughout the duration of this case, and choices matter. *Cf. Gonzales Claudio*, 806 F.2d at 342–43 ("It suffices for present purposes to

conclude that the Government, even if not deserving of blame, bears

a responsibility for a portion of the delay significant enough to add considerable

weight to the defendants' claim that the duration of detention has exceeded

constitutional limits.") (citation omitted).

Under these circumstances, the Court finds that both sides have

contributed enough to the age of this case that the second factor in the due

process analysis is neutral and does not favor either party.

> 3.  *Strength of the Proof*

As noted above and without infringing on the presumption of innocence,

the final factor in the due process analysis requires the Court to consider the

strength of the Government's evidence that defendant poses a risk of flight, a

danger to the community, or both.  Some details of the Court's analysis appear

earlier in this Decision and Order.  In short, defendant faces gravely serious drug,

firearm, and murder-related racketeering / racketeering-conspiracy charges that

trigger a statutory presumption in favor of detention.  Unlike Rodriguez, defendant

faces life in prison if convicted as charged.  Also unlike Rodriguez, defendant now

has proceeded through extensive consolidated suppression hearings during

which the Government presented evidence from informants, surveillance, and

other sources.  *Cf. U.S. v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987) ("As to the

weight of the evidence, the government apparently has numerous informants as

well as physical evidence to support its charges.  Indeed, [defendant] has made

20

no significant attack on the government's proffered evidence."). The evidence that the Government would present at trial appears to be strong and has strengthened over the course of the case. Defendant has a lengthy criminal history that includes a history of probation and parole revocations. Ample reasons thus exist to believe that defendant has a strong motive to flee and would pose a danger to the community despite lifelong ties to the Western New York area. This final factor in the due process analysis thus favors the Government.

In the end, then, a review of the due process factors shows one neutral factor and two that favor the Government. On this basis, the Court concludes that defendant's continued pretrial detention would not offend due process. The Court cautions the Government, however, that it must prepare this case for trial as expeditiously as possible. The Court noted when reviewing bail for Rodriguez that any trial in this case likely would not occur within this calendar year. Even if that prediction holds true—and the Government is strongly encouraged to prove it wrong if possible—the Government must take all necessary measures to have a trial ready to begin by early next year to avoid pushing this defendant and others into uncharted due process territory. The Court thus will make its denial of the pending motion without prejudice to revisit the possibility of bail conditions if the Government has not moved to set a trial date by January 15, 2014.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court denies defendant's bail motion

(Dkt. No. 764), but without prejudice to revisit the issue of bail if the Government

has not filed a motion to set a trial date by January 15, 2014.

SO ORDERED.

_____/s/Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: March 18, 2013