UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                        **DECISION AND ORDER**
       v.                                                               09-CR-331-A

MATTHEW SMITH,

               Defendant.

---

Defendant Matthew Smith was charged in an Indictment and was convicted, after a jury trial that lasted five and a half weeks, of eight crimes related to his conduct as a member of a violent street gang known as the 10th Street Gang. Defendant Smith has moved pursuant to Fed. R. Crim. P. 29(c) for a judgment of acquittal notwithstanding the jury's verdicts based upon a claim of insufficiency of the evidence with respect to two VCAR murder counts and one 924(c) count for possessing a firearm in furtherance of a narcotics-trafficking conspiracy.[1] The Defendant has also moved pursuant to Fed. R. Crim. P. 33 for a new trial on all but two of the eight counts of conviction based upon a claim of jury misconduct. For the reasons stated below, the Court finds that the Defendant fails to carry his heavy burden under Rule 29 to show that any judgment of acquittal should be ordered, and fails to carry his heavy burden under Rule 33 to show that a new trial is necessary to avoid manifest injustice. The Defendant's motions are therefore denied.

---

[1] The acronym "VCAR" refers to a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959(a). The reference to a "924(c) count" is to a charge of use, carrying, or possession of a firearm during or in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c). "RICO" refers to the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

## BACKGROUND

The testimony of witnesses and the exhibits admitted during the five and a half week trial of this case established that a street gang known as the 10th Street Gang had been operating on the West Side of Buffalo, New York, in the vicinity of 10th Street. For conduct primarily related to the Gang, Defendant Smith was tried with three co-defendants, and he was convicted of one RICO conspiracy count in violation of 18 U.S.C. § 1962(d), one substantive RICO count in violation of 18 U.S.C. § 1962(c), two VICAR murder counts in violation of 18 U.S.C. § 1959(a), a narcotics-conspiracy count in violation of 21 U.S.C. § 846, one count of possessing a firearm in furtherance of a drug conspiracy in violation of 18 U.S.C. § 924(c), and two counts of possession of heroin with intent to distribute and distribution in violation of 21 U.S.C. § 841(a). Dkt. No. 1774 (verdict sheet).[2]

Members and associates of the 10th Street Gang engaged in coordinated criminal activities that perpetuated the Gang, including violence, threats of violence, and drug-trafficking, and they were involved in Gang-related murders, attempted murders, and assaults; the distribution of heroin, cocaine, crack cocaine, marijuana, and ecstasy. Many members and associates of the Gang possessed firearms during their criminal activities, and firearms were shared among Gang members. The 10th Street Gang was a rival of other street gangs, including a similar neighborhood

---

[2] A redacted Indictment marked as Court Exhibit 3 is at Dkt. No. 1771. Dozens more co-defendants were charged in a series of Superseding Indictments in this case, but Defendant Smith and the three co-defendants tried with him were the only defendants to go to trial from a larger group of defendants severed for trial pursuant to *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989).

criminal gang known as the 7th Street Gang, which also operated on the West Side of Buffalo. At various times, deadly violence erupted between the 10th Street Gang and the 7th Street Gang.

There was substantial evidence during the trial that Defendant Smith was a long-time associate and member of the 10th Street Gang. Along with others affiliated with the Gang, the Defendant, as a young teenager, began selling marijuana in the vicinity of the 10th Street Park near the intersection of 10th Street and Maryland Street. The area was considered exclusive 10th-Street-Gang territory, and the territorial exclusivity was sometimes enforced with violence and threats of violence.

For example, on one occasion when persons believed to be affiliated with the 7th Street Gang were approaching the 10th Street Park, Defendant Smith grabbed a .22 caliber handgun that was used by those affiliated with the Gang to protect themselves and their drug dealing at the Park. Others were arguing about who would use the gun, but the Defendant grabbed it from another person, rode off on a bicycle in the direction of the intruders, and shot at them.

Years later, on April 16, 2006, a group that included 10th Street Gang members was walking to a cookout in the vicinity of West Avenue and Maryland Street. At approximately 2:48 p.m., while among the group, Robert Sanabria, the younger brother of Defendant Smith's co-defendant and fellow 10th Street Gang member Jonathan Delgado, was shot in the stomach and seriously injured during a drive-by shooting. During an investigation by the Buffalo Police Department, Sanabria identified 7th Street Gang member Luis Medina as the person who shot

him.

The drive-by shooting of Sanabria by Medina was a case of mistaken identity: Medina meant to shoot a 10th Street Gang member who had recently been involved in fist fights with 7th Street Gang members. Sanabria had borrowed a New York Yankees jacket from that 10th Street member. Medina believed he was shooting the owner of the jacket.

After news of the shooting of Sanabria spread, a number of 10th Street Gang members and associates gathered in the 10th Street Park. They were upset and angry about the shooting, and some began to plan to retaliate. Some began seeking firearms they could use. Defendant Smith was at the Park, and when a teenaged couple walked by on the street, the Defendant confronted the male and demanded to know if he was associated with the 7th Street Gang. The female said "No," but when the young male responded with profanity, the Defendant and others jumped him and beat him up.

Later that night, Defendant Smith went to an apartment on the corner of Carolina and Niagara Streets, where 10th Street Gang member Sam Thurmond lived. The Defendant knew that Gang members and associates who had decided to shoot 7th Street Gang members in retaliation for the drive-by shooting of Sanibria were meeting in Thurmond's apartment to plan and to allocate guns that were being collected to use to retaliate. When the Defendant learned that some Gang members and associates planned to drive around to look for 7th Street Gang members to shoot, the Defendant volunteered that he and some people he was with would drive

4

around, and that he would call Thurmond if they located any 7th Street Gang members.

A short time after leaving Thurmond's apartment on Buffalo's West Side, Defendant Smith called Thurmond and told him that 7th Street Gang members and associates were at a house at 155 Pennsylvania Street a short distance away. He and Thurmond, among others, knew the location because there had previously been a large brawl there involving the 10th Street Gang and 7th Street Gang. The Defendant said to Thurmond, "They're out there, do what you've gotta do," or words to that effect.

Acting on Defendant Smith's advice, 10th Street Gang members and associates rode in cars to the area of 155 Pennsylvania Street and met in an nearby alley. They burst from the alley shooting at people on and near the porch of 155 Pennsylvania Street. They shot and killed Brandon MacDonald and Darinell Young. At least five guns were fired during the attack. Brandon MacDonald was killed by a .380 caliber round that was recovered from his chest. Darinell Young died after being shot multiple times. Durell Maddox, Miguel Albaran, Aaron Williams, and Payge Diaz were also shot, but they survived.

Defendant Smith and people he was with heard the gunfire from the vicinity of 155 Pennsylvania Street. The Defendant stated his opinion by saying words to the effect of ". . . they got what they deserved." The Defendant suggested to a person he was with that they "get their stories straight."

It turned out the April 17, 2006 murders and attempted murders at 155

Pennsylvania Street by 10th Street Gang members and associates was another case of mistaken identity. Brandon MacDonald, Darinell Young, and the other shooting victims targeted by Defendant Smith were not members of the 7th Street Gang.

The April 17, 2006 murders and attempted murders were far from the only instance of violence between members of the 10th Street Gang and the 7th Street Gang. And Defendant Smith was also involved in violence that did not involve conflict with the 7th Street Gang. For example, on another occasion, while the Defendant and other 10th Street Gang members were at a house on Parkdale Avenue where they sold crack cocaine, the Defendant grabbed a firearm that belonged to 10th Street Gang member Jairo Hernandez. The Defendant ran outside and fired a shot to stop people who were chasing a friend of his. The firearm was among firearms at the premises that were used to protect drugs and drug-proceeds at the house. On other occasions, such as when he drove 10th Street Gang member Tony Peebles to pick up a firearm to shoot at an associate of the 7th Street Gang, the Defendant helped other Gang members possess firearms used to perpetuate 10th Street Gang activities.

I.

**Judgments of Acquittal are Not
Warranted for Counts 3, 4 and 6.**

Defendant Smith moves pursuant to Fed. R. Crim. P. 29(c) for judgments of acquittal notwithstanding the jury's verdicts on the two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and on the count of possession of

6

a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). The Defendant contends that evidence during the trial was not legally sufficient to establish beyond a reasonable doubt that he was responsible for the murders of which he was convicted, or alternatively, to show that he participated in the murders to maintain or increase his position in a racketeering enterprise. He also contends the jury lacked legally-sufficient evidence to prove beyond a reasonable doubt that he ever possessed a firearm in furtherance of the drug-trafficking conspiracy of which he was convicted.

In general, Fed. R. Crim. P. 29(c) authorizes a court to decide a case on its own and to acquit a defendant on legal grounds despite a jury verdict of guilty. But a motion for acquittal pursuant to Rule 29(c) may be granted only if, after viewing all of the evidence in the light most favorable to the United States, no rational juror could find the essential elements of the charged crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). In viewing the evidence in the light most favorable to the United States, the United States must be credited with every reasonable inference that could have been drawn in its favor. *Jackson,* 443 U.S. at 319; *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). The Rule 29(c) motion can only be granted if the evidence that the defendant committed the crime alleged is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). Accordingly, a defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v.*

*Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003).

Moreover, the ultimate question raised by a challenge to the legal sufficiency of evidence is not whether a court believes that the evidence adduced at trial established a defendant's guilt beyond a reasonable doubt, but whether any rational trier of fact could reasonably reach that conclusion. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015). The Second Circuit has emphasized repeatedly that "courts must be careful to avoid usurping the role of the jury." *Facen*, 812 F.3d at 286 (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.2003)). "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id.*

**A. Counts 3 and 4: the VCAR murders.** The five elements of the murder-in-aid-of-racketeering offenses in violation of 18 U.S.C. § 1959(a)(1) charged in Counts 3 and 4 of the Indictment, which were based on the murders of Brandon MacDonald and Darinell Young, are:

> . . . (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that that defendant committed or aided and abetted the murder, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (citations omitted). Defendant Smith focuses his Rule 29 challenges to the VICAR murder counts on the fourth and fifth elements, contending the evidence was not legally sufficient to prove

8

beyond a reasonable doubt that he aided and abetted the murders, or that he did so in order to maintain or increase his position in the 10th Street Gang. He raises only a conclusory challenge to proof of the other elements.

Preliminarily, the Court finds that more than sufficient evidence admitted during the trial established that the 10th Street Gang was a racketeering enterprise. The Gang was an association of continuing members known to themselves and to others who had common purposes that included the racketeering activities charged in the RICO-conspiracy count and substantive-RICO count of the Indictment. Moreover, the testimony and other evidence established beyond a reasonable doubt that Defendant Smith was a member of the Gang during the time period surrounding the murders.

The Court also rejects Defendant's more focused contentions on the VCAR murder counts as without merit. The evidence at trial established that when Defendant Smith called Sam Thurmond at the apartment where the retaliatory attack on 7th Street Gang members was being planned and staged, the Defendant knew that the persons at 155 Pennsylvania Street were about to face murderous gunfire as a result. Specifically, when he advised Thurmond that, "They're out there, do what you've gotta do," the Defendant had the state of mind of the murderers just as if he had fired fatal shots himself, with specific intent to kill Brandon MacDonald and Darinell Young, who he mistakenly believed were 7th Street Gang members. He aided the shooters with intent to trigger the natural and probable consequences of the attack.

Defendant Smith confirmed his mental state when, upon hearing the gunfire,

9

he expressed his opinion that ". . . they got what they deserved." And he expressed a consciousness of guilt when he suggested to an associate that they "get their stories straight." Based upon the evidence at trial, the Defendant's argument that there was insufficient proof of his involvement in the murders to support his convictions of the VCAR murders in Counts 3 and 4 is without merit.

Defendant Smith seeks to undermine the testimony of witnesses and other evidence about his personal role in the murders primarily by impugning the credibility of cooperating witnesses who testified about the events surrounding the murders. However, as stated above, in order to avoid usurping the jury's exclusive functions, the Court may not weigh the significance of evidence or resolve inconsistent evidence against the jury's verdict. *See e.g.*, *United States v. Cunningham*, 723 F.2d 217, 232 (2d Cir. 1983). The Defendant's attempts to impeach witnesses in support of his Rule 29(c) motion fail as a matter of law.

Defendant Smith also argues that the evidence at trial was legally insufficient to establish that he participated in the murders to maintain or increase his position in the 10th Street Gang. The Court disagrees. Testimony during the trial established that 10th Street Gang members commonly understood that they needed to "put in work" to maintain or increase their status in the Gang. Proof of the Defendant's own conduct demonstrated that he understood that his relative status with and in the Gang was dependent on his efforts to sell narcotics, to commit acts of violence, and to aid and abet racketeering and other criminal acts of other members of the Gang. Even as a young teenager at 10th Street Park, the Defendant grabbed a .22 caliber

revolver from others at the 10th Street Park who were arguing about who would take action, and set off on a bicycle to shoot at suspected associates of the 7th Street Gang. He demonstrated an understanding of the role his criminal activity played in determining his status with the Gang.

Evidence at trial supported the jury's conclusion that conduct of Defendant Smith before the April 2006 murders was similarly motivated by consideration of his status in the Gang. Due to his desire to "put in" a responsible share of "work," the Defendant participated in beating a suspected associate of the 7th Street Gang near the 10th Street Park as 10th Street Gang members and associates gathered there in the tense and angry aftermath of the drive-by shooting of Robert Sanibria.

The evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that the drive-by mistaken-identity shooting of Sanibria was a compelling event for 10th Street Gang members, that retaliation against the 7th Street Gang was widely viewed as essential to the Gang among Gang members, and that Defendant Smith concluded he would not be left out of it. At first, the Defendant did not join other Gang members and associates inside Sam Thurmond's apartment to plan and stage the retaliatory attack. But the Defendant's desire to find out what was planned, and to help out, led him back to the apartment. After the Defendant learned what was planned, his desire to act to furtherance of the murderous purpose led him to volunteer to drive around to look for 7th Street Gang members to shoot, so that others preparing to carry out an attack would not need to do so. He promised to call Thurmond if he found 7th Street Gang members, and he did. He made the

11

statements targeting the persons at 155 Pennsylvania Street. The Court finds that a rational jury could find beyond a reasonable doubt, based upon the evidence at trial, that the Defendant understood that it was expected that Gang members would help with the murderous retaliation against the 7th Street Gang, and that he participated in the retaliation with intent to murder in furtherance of his status in the Gang. *See United States v. Burden*, 600 F.3d 204, 220 (2d Cir. 2010). For these reasons, the Defendant's Rule 29(c) motions for acquittal of the VCAR murders in Counts 3 and 4 are denied.

### B. Count 6: Possession of a Firearm in Furtherance of the Drug-Trafficking Conspiracy in Count 5.

Defendant Smith also contends that there was insufficient evidence to establish that he violated 18 U.S.C. § 924(c) by possession of a firearm in furtherance of the conspiracy to traffic in cocaine-base, cocaine and marijuana. He argues that no evidence showed that firearms he merely possessed helped in the commission of the drug-trafficking conspiracy.

The "in furtherance of" requirement in 18 U.S.C. § 924(c) "may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). The standard is whether the firearm "afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005). The defendant's possession of the firearm need not have been exclusive, so long as the firearm was "readily accessible to protect drugs, drug proceeds, or the

drug dealer himself." *United States v. Snow*, 462 F.3d 55, 62–63 (2d Cir. 2006) (citing *Lewter*, 402 F.3d at 322 and other cases).

The testimony at trial showed that while Defendant Smith and other 10th Street Gang members were at a house on Parkdale Avenue from which they sold crack cocaine, the Defendant grabbed a firearm that was among other firearms that were used to protect drugs and drug-proceeds at the house. The Defendant ran outside and fired a shot to stop people chasing a friend of his. Although the firearm belonged to Jairo Hernandez, and there was no evidence that the Defendant ever picked up that firearm to do something that more directly furthered his participation in the crack-cocaine dealing from those premises, the Defendant's conduct was sufficient to prove his ready access to the firearm, and the power and intention to use it.

Similarly, the Defendant grabbed a .22 caliber handgun that was used by persons affiliated with the 10th Street Gang to protect themselves and their marijuana-trafficking at the 10th Street Park, and shot at intruders suspected of being associates of the 7th Street Gang. The evidence was legally sufficient to show the Defendant had ready access to a gun that furthered his and his co-conspirators' marijuana sales from the Park, and that the Defendant had the power and intention to use the firearm. The evidence at trial, which included evidence that guns were readily shared among 10th Street Gang members, was legally sufficient to support his conviction for violating § 924(c) as alleged in Count 6.

Defendant Smith challenges the evidence at trial that supports the jury's conclusion by suggesting the evidence was just too thin to support the 924(c)

13

conviction. However, the Court finds the evidence was not "so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quotation omitted). The Defendant's Rule 29(c) motion for an acquittal on Count 6 is therefore denied.

II.

**A New Trial is Not Required Due to the
Relative Speed of the Jury Deliberations.**

Defendant Smith has also moved pursuant to Fed. R. Crim. P. 33 for a new trial on six of the eight counts of conviction based upon his assertion that misconduct must have occurred during the jury's deliberations. The Defendant contends that, because the jury returned a verdict after about three and a half hours of deliberations, the jury must have either deliberated prematurely or otherwise disregarded the Court's instructions in some way. The Defendant argues that, given the volume and variety of evidence admitted during the five and a half week trial of the Defendant and his three co-defendants, the deliberations were not long enough for the jury to properly reach the unanimous verdicts and special findings required by the 27-page verdict form. The Defendant suggests that the gravity of his convictions, and the length of the sentences of imprisonment that he faces, compel the Court to grant a new trial.

Rule 33 authorizes a defendant to move for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a); *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013). The Rule "confers broad discretion upon a trial court to set aside a jury

verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). A trial court is permitted to weigh the evidence and credibility of witnesses. *Sanchez*, 969 F.2d at 1413.

Nevertheless, a trial court must only exercise its authority under Rule 33 " 'sparingly' and in 'the most extraordinary circumstances.' " *Sanchez*, *supra* at 1413. "To grant [a Rule 33] motion, '[t]here must be a real concern that an innocent person may have been convicted.' " *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 1997) (alteration omitted). A defendant bears a heavy burden to show that a new trial is warranted. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

Defendant Smith's claim that the jury either deliberated prematurely or otherwise disregarded the Court's instructions to proceed with due care rests on his contention that the jury simply did not expend enough time considering the evidence introduced during the five and a half week trial. Based partly upon the Court's own observations while presiding over the trial, the Court disagrees. Although the trial was long, the jury heard a lengthy series of closing arguments, it had a copy of the Court's instructions, and it had the lengthy verdict form to help it organize its deliberations.

Moreover, the proof of the murders of Darinell Young and Brandon MacDonald, the attempted murders of others who were shot at the same time on April 17, 2006, drug-trafficking, and of specific instances of other racketeering activity, was generally strong. And there was substantial overlap of the proof

15

underlying different counts. Proof of the VCAR murders of Darinell Young and Brandon MacDonald was also the subject of Special Factors findings underlying the RICO conspiracy count, and those murders and related shootings were one of the six racketeering acts that the jury unanimously found in convicting the Defendant of the substantive RICO count. Three of the remaining five racketeering acts the jury found in convicting the Defendant of the substantive RICO count involved possession of heroin with intent to distribute it, and the Defendant conceded he was a heroin dealer and guilty of two of the three controlled sales underlying those acts. Dkt. No. 1891, pp. 19-20.[3] The jury's task was not so difficult or complex that the Court will presume misconduct from the relative speed of deliberations. *See e.g.*, *United States v. Barajas*, 2011 WL 5999024, at *2 (D.Kan. Nov. 30, 2011) (citing cases). Given what the jury needed to work through in this case, and given the proof against the defendants, the roughly three and a half hours of deliberations is as probative of the efficiency of the jury's deliberations as it is of the Defendant's speculation that the jury disregarded the Court's instructions or reached its verdicts prematurely or in some other improper way.

The Court instructed the jury routinely throughout the trial of Defendant Smith and his co-defendants that it should not deliberate until the close of the evidence and

---

[3] During the trial, Defendant Smith generally conceded he was a heroin dealer and conceded his guilt to Counts 7 and 8 charging that he possessed heroin with intent to distribute it in violation of 21 U.S.C. § 841(a) on July 15, 2010 and July 22, 2010, respectively. He does not challenge his convictions on those two counts, and the same series of controlled sales of heroin were charged as racketeering acts Four, Five and Six underlying the substantive RICO violation charged in Count 2. The Defendant argued at trial that there was no proof to support the charge that he conspired to traffic in cocaine base, cocaine, and marijuana in Count 5, and he maintained his innocence of that conspiracy.

until it was given final instructions on the law. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). The jury was instructed to consider each defendant individually, and to consider each charged offense separately. "[A]bsent evidence to the contrary, [the Court] presume[s] that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the [C]ourt." *United States v. Rosario*, 111 F.3d 293, 300 (2d Cir. 1997) (quotation and citation omitted). The Defendant offers no evidence supporting his speculation that the jury may have deliberated prematurely or otherwise improperly reached its verdicts and unanimous findings. The Court observed no evidence of juror misconduct. Speculation about reasons for the duration of the jury's deliberations, or about the content of the deliberations, does not warrant a new trial. Notwithstanding the severity of the sentences the Defendant faces, the Court finds the Defendant has not met his burden to show that it is a "manifest injustice" to let the jury's guilty verdicts stand.

Although Defendant Smith has not requested a hearing, the Court has authority under Rule 33 to grant a hearing in connection with a motion for a new trial, if a hearing is warranted. However, post-verdict speculation about possible jury misconduct can never authorize " 'a fishing expedition.' " *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting *United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978)). Instead, because of the sanctity of jurors' deliberations, a defendant must "come[] forward with 'clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred.' " *Ianniello*, 866 F.2d at

543 (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)).  Absent such a showing with respect to the duration of the jury's three and a half hour deliberations in this case, no further inquiry is warranted; it would be a fishing expedition.  *See United States v. Sabhnani*, 599 F.3d 215, 248-50 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, the motions of Defendant Matthew Smith for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) on Counts 3, 4, and 6 of the Indictment, and for a new trial pursuant to Fed. R. Crim. P. 33 on Counts 1 through 6, are denied.  Sentence will be imposed September 13, 2017, at 12:30 p.m.

**SO ORDERED.**

*S/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  August 17, 2017