UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

**DECISION AND ORDER**
9-CR-331-A

MATTHEW SMITH,

Defendant.

Defendant Matthew Smith was convicted by a jury on September 5, 2014, after a five-and-a-half-week trial, of eight crimes related to his conduct as a member of a violent street gang operating on the West Side of Buffalo, New York, known as the 10th Street Gang.

Specifically, Defendant was convicted of one RICO conspiracy count with special sentencing factors charging aiding and abetting of two murders, in violation of 18 U.S.C. §§ 1962(d) and 1963(a) (Count 1); one substantive RICO count, in violation of 18 U.S.C. §§ 1962(c) and 1963(a) (Count 2); two counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Counts 3 and 4) ("VCAR-murder counts"); conspiracy to possess with intent to distribute, and to distribute, 280 grams or more of cocaine base, and 5 kilograms or more of cocaine and marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(D), and 851 (Count 5); one count of possession of a firearm in furtherance of a drug-

trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count 6); and two counts of possession with intent to distribute, and distribution of, heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 851 (Counts 7 and 8). *See* Dkt. No. 1774 (verdict sheet); Dkt. No. 1771 (redacted Indictment).

On October 31, 2027, this Court sentenced Defendant principally to life imprisonment.[1] A life sentence was mandatory on the two VCAR-murder counts. On December 4, 2020, the Second Circuit issued a Mandate (Dkt. No. 2339) affirming Defendant's judgment of conviction on direct appeal.

Pending before this Court is Defendant's *pro se* motion (Dkt. No. 2412) for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. The Government filed a response in opposition (Dkt. No. 2418), and Defendant filed reply papers (Dkt. No. 2420). Defendant is presently 40 years old, and he is incarcerated at U.S. Penitentiary ("U.S.P.") Tucson.[2]

For the following reasons, Defendant's motion for compassionate release is DENIED. The Court presumes the parties' familiarity with the record, the procedural history, and the arguments before the Court, which are reiterated only as necessary to decide the instant motion.

---

[1] In particular, Defendant was sentenced to a life term as to each of Counts 1 through 5, 5 years as to Count 6 to be served consecutive to all other counts, and 30 years on Counts 7 and 8 to be served concurrently to the life term imposed as to Counts 1 through 5, for an aggregate total sentence of life plus 5 years.

[2] *See Inmate Locator: Register Number 20362-055*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (last visited Oct. 23, 2026).

Preliminarily, given the Government's waiver/forfeiture of the administrative exhaustion requirement (*see United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)),[3] the Court will consider the motion on the merits.

Defendant argues that there are extraordinary and compelling circumstances present that warrant a reduction of his life sentence, which boil down to three primary circumstances: his incarceration during the COVID-19 pandemic, his young age at the time of the offenses of conviction, and his "extraordinary rehabilitation."

First, Defendant argues that he experienced harsher and more punitive conditions of confinement due to the COVID-19 pandemic than the Court could have anticipated at the original sentencing. However, Defendant "fails to allege any unique conditions that only he suffered," and instead he "cites to general circumstances experienced by all inmates, which do not in and of themselves constitute extraordinary and compelling circumstances warranting relief." *United States v. Elder*, 17-CR-05-A, 2025 U.S. Dist. LEXIS 26410, *37 (W.D.N.Y. Feb. 13, 2025) (collecting cases).[4]

---

[3] Defendant attached to his motion, which was filed on April 10, 2023, a copy of his request for compassionate release to the Warden of USP Tucson (*see* Dkt. No. 2412, pp. 65-66), dated March 3, 2023. The Government's opposition papers do not mention exhaustion and instead proceed straight to addressing the merits of the motion.

[4] Defendant also speculatively asserts that he was subjected to a heightened danger of contracting the virus that causes COVID-19 due to his status as a BOP inmate and the uncertainty of whether vaccines were effective against new variants of the virus. Only one month after he filed his motion, however, "COVID-19 [was] no longer considered a federal ongoing public health emergency." *United States v. Jimenez Cruz*, 19-CR-326 (KMW), 2024 U.S. Dist. LEXIS 152680, *4-5 (S.D.N.Y. Aug. 26, 2024), citing *COVID-19 Public Health Emergency*, U.S. Dep't Health & Human Servs. (last reviewed Dec. 15, 2023), https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html ("The federal Public Health Emergency for COVID-19 expired on May 11, 2023."). As such, Defendant has not shown that there is "an ongoing outbreak of infectious disease" or "an ongoing

Second, Defendant argues a reduced sentence is warranted because when much of the offense conduct occurred, he was a teenager whose culpability was diminished and who lacked "cognitive maturity" because of his young age. He also asserts that he had learning disabilities and suffered from cognitive impairments, and that grew up in an impoverished, single-parent household.[5] He posits that due to these circumstances, he was inevitably at-risk of delinquency and vulnerable to negative peer influences. Liberally interpreting Defendant's arguments, he asserts that by sentencing him in 2014, this Court did not consider, and could not have fully considered, all the scientific information and research now available about brain development and its impact on decision-making into an individual's 20's.

To be sure, courts in this Circuit have granted compassionate release to defendants who were young at the time of their offenses of conviction, albeit when a confluence of other factors were presented. Here, however, any arguments pertaining to Defendant's youth and immaturity are tempered by the fact that Defendant's membership in and/or association with the 10th Street Gang began in or about 2000 and continued until in or about 2011. Thus, although Defendant was only approximately 14 years old when he was first associated with/joined the gang,

---

public health emergency," and he has also failed to show that his situation meets the other criteria as outlined in Guideline § 1B1.13(b)(1)(D).

[5] When Defendant was interviewed by U.S. Probation for his Presentence Investigation Report, he "described an uneventful childhood" free from abuse. Although his father was never involved in his life, he reported a good and supportive relationship with his mother and maternal grandmother, who raised him. *See* Dkt. No. 2146 (PSR), ¶ 150. The only mention of Defendant's cognitive challenges in the record that the Court could find was Defendant's mother noting he had been "placed in special education classes throughout his development as he had speech and hearing problems." *Id.* at ¶ 163.

he was 20 years old when he was involved in the commission of the murders and attempted murders on April 17, 2006, and his affiliation with the gang did not end there. Indeed, his association with the enterprise continued for years and into his mid-20s, until he was about 24 years old.

Defendant relies on *United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021), positing that its analysis should be "extended" here. In *Ramsay*, the Southern District reduced the defendant's sentence for murder in aid of racketeering—which he committed at age 18—from life to 360 months. *Id.* at 428-29. It found several circumstances warranted such a reduction: (1) as reflected in its comments at the sentencing held in 1998, it recognized the life sentence was "likely greater than necessary to satisfy the purposes of criminal sentencing" but it was constrained by the then-mandatory U.S. Sentencing Guidelines; (2) defendant's youth at the time of the offense, which was "highly relevant" because his "decision to fire into a crowd ha[d] all the hallmarks of adolescent crime: a split-second, hot-headed choice made in the presence of peers"; (3) defendant's "history of childhood abuse and neglect" that included "severe physical abuse" by "various caregivers"; and (4) defendant's "compelling evidence of rehabilitation." *Id.* at 410-14, 424-29.

*Ramsay* is readily distinguishable. To start, in *Ramsay*, the defendant submitted evidence of a far more damaging childhood and stronger evidence of rehabilitation than Defendant did in the instant case. Furthermore, at Defendant's sentencing, this Court did not express any reservations about imposing the mandatory-minimum life sentence on the two VCAR-murder counts. It also elected to impose concurrent, Guidelines-range sentences of life on Counts 1, 2, and 5,

even though Counts 1 and 2 carried no statutory minimum and the minimum on Count 5 was only 20 years. The Court necessarily considered the 18 U.S.C. § 3553(a) factors in imposing Guidelines-range sentences on the counts that did not have mandatory minimums, and thus contemplated Defendant's age at the time of the offense and his upbringing. In addition, were Defendant to be sentenced today, he would still be facing a mandatory life sentence on the two VCAR-murder counts. In further contrast to the defendant in *Ramsay*, Defendant's conduct in this case could not be described as a "split-second, hot-headed choice." Defendant asserts that his "crime" (seemingly, aiding and abetting in the double murder of Brandon MacDonald and Darinell Young on April 17, 2006) "was an aberration" (Dkt. No. 2412, p. 22). This Court found to the contrary (*see* Dkt. No. 2212 (Sentencing Tr.) ["It's obvious this incident was not an isolated incident."]; *see also* Dkt. No. 2124 (D&O on Post-Trial Motions) ["There was substantial evidence during the trial that Defendant Smith was a long-time associate and member of the 10th Street Gang."]).

Lastly, Defendant contends that his "extraordinary" rehabilitation while in BOP custody constitutes an extraordinary and compelling reason for a reduction in sentence. To be sure, Defendant has provided certificates evidencing his completion of various educational/rehabilitative programs (*see* Dkt. No. 2412, pp. 40-50), as well as letters from family members and friends who provide their opinion that he has changed for the better and is remorseful (*see* Dkt. No. 2412, pp. 55-62). Defendant further argues that he is a "model prisoner" who has "maintained an excellent work record in prison," has engaged in therapy, and has a "good disciplinary record" in custody (Dkt. No. 2412, pp. 3, 5, 22, 25-26); while Defendant

does not provide any proof of such statements, the Government does not contest them. In addition, Defendant expresses his "sincere remorse" for his crimes and asserts he has undergone a "dramatic character change." Dkt. No. 2412, pp. 26, 28. In his reply papers, he asserts without proof that he is "no longer a gang member" and that he has "put[ ] the gang life behind him[.]" Dkt No. 2420, p. 13.

Although Defendant has provided evidence of some of his proclaimed rehabilitation efforts, rehabilitation is "not, *by itself*, an extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13(d) (emphasis added), citing 28 U.S.C. § 994(t). Rather, it may only be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Having found Defendant's other circumstances are not extraordinary or compelling, the Court concludes he has not met his burden of establishing such circumstances.

Even assuming, for sake of argument, that Defendant demonstrated an extraordinary and compelling reason for a sentence reduction, the Court would conclude one is unwarranted upon assessing the 18 U.S.C. § 3553(a) factors.

At sentencing, the Court stated that while Defendant was not one of the actual shooters involved in the double homicide, in which four other victims were injured, he was "part of the discussion and the decision to retaliate against the 7th Street Gang for the drive-by shooting of [ ] co-defendant Jonathan Delgado's brother, Robert Sanabria." Dkt. No. 2212, p. 25. Defendant was the individual who targeted those congregated outside of 155 Pennsylvania Avenue: he had volunteered to look for rivals in the 7th Street Gang, and he drove by that location and observed people

there and then called 10th Street Gang members, who he knew were prepared to/intended to retaliate, stating, "they're out there" and "do what you all gotta do." Dkt. No. 2339 (Mandate), p. 37. After Defendant heard gunshots, he said to a fellow 10th Street Gang member/associate that the victims "got what they deserved." *Id.* As it turned out, this was a case of mistaken identity as all six shooting victims (including the two who were murdered) were innocent bystanders who were neither members of the 7th Street Gang nor participants in the ongoing 7th Street Gang/10th Street Gang conflict. Brandon MacDonald was 14 years old. Darinell Young was an older man who was walking home from a store.

In addition to the event at 155 Pennsylvania Avenue, Defendant committed other violent acts, including shootings and assault. *See* Dkt. No. 2124, pp. 3, 6.

Even when considering Defendant's efforts at rehabilitation and other 18 U.S.C. § 3553(a) factors that may weigh in his favor, the Court concludes that a sentence of life plus 5 years remains sufficient but not greater than necessary to fulfill the purposes of sentencing.

For the foregoing reasons, Defendant's motion for compassionate release (Dkt. No. 2412) is DENIED.

**IT IS SO ORDERED.**

__*s/Richard J. Arcara*__________
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: October 23, 2026
Buffalo, New York